**PORTER, Adm'r, Office of Price Administration, v. UNDERWOOD CORPORATION.**

**Civil Action No. 2650.**

District Court, E. D. Wisconsin.

April 5, 1946.

John J. Burke and Lee K. Beznor, both of Milwaukee, Wis., for plaintiff.

Lines, Spooner & Quarles, of Milwaukee, Wis. (by Charles B. Quarles, of Milwaukee, Wis.), and M. James Spitzer, of New York City, for defendant.

DUFFY, District Judge.

This action was commenced by the administrator of the Office of Price Administration to recover treble damages and secure injunctive relief for alleged violations of Revised MPR 165 (9 F.R. 7439). As a result of a pre-trial conference the court ordered the trial of a preliminary issue. It was stipulated that the month of March, 1945, was a typical month and a trial has been had to determine whether the practice followed in that month by the defendant in making charges for services and repairs of typewriters and other business machines was in accordance with provisions of Revised MPR 165.

The defendant, whose operations are national and international in scope, is engaged in the business of manufacturing, selling, and repairing typewriters, adding and accounting machines, and other similar equipment. It maintains and operates a number of branch sales and service offices, including one at Milwaukee. The only activities of the Milwaukee branch which are attacked in this suit pertain to shop repairs of typewriters or other business machines. The criticized activities are further limited to the period between August 1, 1944, and June 15, 1945, and involve customers other than agencies and departments of the federal government. The sales of new and used equipment and charges for repair work performed at a customer's place of business are not here in question.

The pricing method criticized was pursuant to the following pattern. A customer would make inquiry of the defendant as to certain repairs. The manager would then send to the customer's office an experienced service man who examined the machine. If adjustments or repairs could not readily be made at the customer's office the repairman took the machine to defendant's shop where it was carefully examined to determine what if any parts were needed, how much time the job would take, and what expenses would be involved. At times this examination involved a partial disassembly of the machine. Then the service manager, or in a limited number of cases a specially trained and experienced assistant, would make a predetermination of the charge, and an original and copy of estimate letter would be forwarded to the customer wherein he was advised of this estimated cost of repairing the machine. If the customer did not approve of the quoted price the machine was reassembled and returned without cost; if the customer approved, he signed an acceptance on the bottom of the carbon copy of the estimate letter which was then to be returned to the defendant. No repair work was started until defendant received this order form. The pricing method herein described was identically the same as used by defendant in March, 1942, and for some years prior thereto.

If a customer desired that repairs be made on the basis of time, parts and expense, this was agreeable to the defendant. However, as a matter of actual practice customers very generally insisted that they be informed in advance as to what a repair job would cost. Indeed this practice was common throughout the industry.

The evidence discloses that during the period in question the defendant's service department employees at the Milwaukee branch were men with extensive preparatory training and of at least several years of actual experience, and thereby qualified not only to do expert repair work but also to examine equipment and accurately predetermine the repair cost thereof.

Pursuant to the requirement of Revised MPR 165 defendant filed with the appropriate war price and rationing board a statement showing the highest rates charg-

ed during the base period of 1942. These were $2 per hour for typewriters and $2.50 per hour for accounting and adding machines, with a minimum charge of $1.75 and $2.00 respectively. These rates have remained unchanged for some years. Also the price charged for parts in March, 1945, was the same as in the base period. Furthermore there has been no change since March, 1942, in the method of computing the time, expense, and any other elements which go into making the predetermined charge.

The applicable provisions of the regulation are:

"Sec. 2. Prohibitions. On and after August 1, 1944, regardless of any contract or other obligation:

"(a) You may not sell any service covered by this regulation at a price higher than your maximum price.

"(b) No person in the course of trade or business may buy any service covered by this regulation at a price higher than the maximum price.

 *     *     *     *     *     *

"Sec. 4. General pricing provisions. In determining your maximum price, use the first of the following provisions which applies to you. Your maximum price shall be:

"(a) The highest price at which you supplied the same service in March 1942 to a purchaser of the same class. If, however, in March 1942 you used a rate or pricing method to determine your price, you may continue to use your highest March 1942 rate or pricing method (using your highest March 1942 charges) to determine your maximum price for the same service, to a purchaser of the same class.

 *     *     *     *     *     *

"Sec. 23. Definitions and explanations.

"(a) When used in this regulation:

 *     *     *     *     *     *

"(9) 'Pricing method' is a formula by which you determined a price for a service in March 1942 which included a rate, and an item for labor, materials, and mark-up for overhead and profit, or any of such items, whether or not the formula was disclosed to the purchaser. Unless the formula included a rate, the figure resulting from the application of the formula was a flat price (except where the supplying of a service was on a cost-sharing basis). See definition of 'rate' below.

 *     *     *     *     *

"(11) 'Rate' is a means of determining a price by multiplying the time involved in supplying a service by a fixed charge per unit of time, or by multiplying the price of the commodity involved by a fixed percentage."

■ The language in this regulation is clear and unambiguous. The regulation contains no provision which by its terms prohibits the defendant from determining the cost of a job before the work is commenced.

■ At the trial the plaintiff offered as an interpretation of the administrator a certified copy of a letter dated September 28, 1944, written to the International Harvester Company by Frederick E. Busse, a member of the Chicago O.P.A. legal staff, in which he gives an interpretation of Revised MPR 165. This letter which was not published of course cannot be received as an official interpretation of the administrator of the O.P.A. Bowles v. Ammon, D.C., 61 F.Supp. 106.

■ Plaintiff argues that estimating is purely a method of guessing the time which will be involved in the charges for repairs. However, the testimony discloses that all of the cost factors are definitely known when the estimate is made; also that several complete analyses have been made of the cost of repair jobs and in every case it either equaled or exceeded the estimate price. There is no evidence in this case that the actual cost of any job was less than the predetermined estimate. Should the unexpected or unpredictable be encountered, it would probably entail more time for repair work than was estimated, but in such case the customer would benefit because of the predetermined price.

In this suit "our only tools * * * are the plain words of the regulation" of which "the core" is the requirement that the defendant "shall charge no more than the prices which" it "charged during the selected base period of March 1 to 31, 1942."[1] Under the regulation it is provided that the defendant's "maximum price" for service on and after August 1, 1944, shall be "the highest price at which" it "supplied the same service in March 1942. * * *"

───────────────

[1] Phrases quoted are from Bowles v. Seminole Rock & Sand Co., 325 U.S. 410, 413, 414, 65 S.Ct. 1215.

Not only did the regulation authorize the defendant to continue charging its highest March, 1942, prices but it was and is thereby expressly made free to use or not to use its March, 1942, "pricing method."

While not controlling it is of interest to note that since December 1, 1942, the United States Government and its various departments, including the Office of Price Administration, insists that the defendant and other manufacturers of typewriters submit an estimate of charges for making shop repairs and overhauls of typewriters owned by such governmental agencies before any repairs are authorized. The very pricing method condemned by the plaintiff herein is a prerequisite to any repair work on machines owned by the government. The plaintiff here demands an injunction restraining a pricing method which the government insists upon where machines are government owned.

I conclude that the defendant has not been in violation of Revised MPR 165 in using the pricing method hereinbefore described. Following the pre-trial conference it was stipulated that in the event the court should determine that the contentions of the defendant are correct on the preliminary issue, a judgment would then be entered dismissing the action. The court having so concluded, counsel for the defendant may submit findings in conformity herewith and judgment dismissing the action.